**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Christopher M. Stephens, Appellant.

Appellate Case No. 2009-116988

———

Appeal From Horry County
Steven H. John, Circuit Court Judge

———

Unpublished Opinion No. 2013-UP-062
Heard October 3, 2012 – Filed January 30, 2013

———

**AFFIRMED**

———

Robert Michael Dudek of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General W. Edgar Salter, III, all of Columbia, for Respondent.

———

**PER CURIAM:** Christopher Stephens was indicted on two counts of accessory before the fact of murder and one count of accessory before the fact of armed

robbery. He was tried together with Jimmy Lee Sessions, who was indicted on one count of first-degree burglary, one count of armed robbery, and two counts of murder. All counts arose from the same incident and involved the same victims. Both defendants were found guilty as charged. Stephens appeals, arguing the trial judge erred in admitting testimony that one of the victims accused him of owing her money for drugs and in allowing a SLED employee to testify about victimology and related matters. We affirm.

1.     Over Stephens's objection, the trial judge allowed James Pearl to testify that shortly before the victims were murdered, he heard one of them accuse Stephens of owing her money for drugs. Stephens argues the testimony was (1) hearsay and (2) highly prejudicial because it suggested a motive for Stephens's involvement in her murder. We find no error.

The victim's statements were made in Stephens's presence, and he never attempted to refute them; therefore, they were admissible as adoptive admissions. *See State v. Nolan*, 318 S.C. 253, 257, 456 S.E.2d 926, 928 (Ct. App. 1995) ("The adoptive admissions rule allows admission into evidence of a defendant's failure to deny statements made in his presence which tend to incriminate him, which a reasonable person would have denied under the circumstances, as by his silence, or his making an evasive, equivocal, unresponsive, or affirmative reply."). Moreover, because the deceased victim was an unavailable declarant and her accusation against Stephens included a declaration on her part that she sold illegal drugs to him, the statement was admissible under Rule 804(b)(3), SCRE, as a statement against her interest. Finally, Stephens himself acknowledged that he owed the victim money; therefore, her accusation would be "merely cumulative," and any error in admitting it would be harmless. *State v. Schumpert*, 312 S.C. 502, 507, 435 S.E.2d 859, 862 (1993).

2.    Stephens further argues the trial judge should not have allowed SLED Agent Michael Prodan to testify as an expert about victimology, method of operation, motive, and related subject matter, arguing admission of this testimony violated Rule 702, SCRE, *State v. White*, 382 S.C. 265, 676 S.E.2d 684 (2009), and this court's opinion in *State v. Tapp*, 387 S.C. 159, 691 S.E.2d 165 (Ct. App. 2010), *rev'd* 398 S.C. 376, 728 S.E.2d 468 (2012). We find no reversible error.

In *State v. White*, the South Carolina Supreme Court held:

> [T]he trial courts of this state have a gatekeeping role
> with respect to all evidence sought to be admitted under

> Rule 702 [of the South Carolina Rules of Evidence],
> whether the evidence is scientific or nonscientific.  In the
> discharge of its gatekeeping role, a trial court must assess
> the threshold foundational requirements of qualifications
> and reliability and further find that the proposed evidence
> will assist the trier of fact.  The familiar evidentiary
> mantra that a challenge to evidence goes to "weight, not
> admissibility" may be invoked only after the trial court
> has vetted the matters of qualifications and reliability and
> admitted the evidence.

*White*, 382 S.C. at 274, 676 S.E.2d at 689.  The *White* decision was issued several months after the trial in the present case took place.

At trial, Stephens objected to Prodan's testimony, arguing (1) he was not informed that the State intended to call Prodan and (2) Prodan's testimony was not relevant. On appeal, Stephens argues only that the testimony was speculative, irrelevant, and therefore admissible.  Although Stephens did not specifically request the trial judge to exercise a gatekeeping role in determining whether Prodan's testimony was admissible, we hold his objection on the ground of relevance was sufficiently specific to address this argument on appeal.  *See* Rule 401, SCRE ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *State v. Tapp*, 398 S.C. 376, 385-86, 728 S.E.2d 468, 473 (2012) ("While our preservation rules require that objections to the admissibility of evidence be specific, they most certainly do not require clairvoyance.") (citation omitted).  Moreover, we hold that even though the law at the time of Stephens's trial allowed the reliability of nonscientific expert testimony to be determined by the jury, the trial judge erred in admitting Prodan's testimony without making his own determination as to whether it was reliable.  *See id.* at 389, 728 S.E.2d at 475 (acknowledging the trial judge erred in admitting certain expert testimony after making an initial determination of the witness's expertise but without vetting the testimony for its reliability).

Nevertheless, we hold that "beyond a reasonable doubt the trial error did not contribute to the guilty verdict[s]" against Stephens.  *Id.* at 390, 728 S.E.2d at 475. Here, Prodan's testimony concerned only the victims and the crime scene.  He never identified Stephens, the co-defendant, or anyone else as a perpetrator and testified that at his insistence, he was not given any information about any suspects

developed in the case.  As was the case in *Tapp*, the jury made numerous factual determinations in arriving at its verdict, including (1) whether Pearl testified truthfully about the victim's accusations against Stephens and the defendants' attempt to enlist his help in committing the crimes, (2) the credibility of witnesses who allegedly heard Stephens's co-defendant admit to committing a crime, (3) whether shoe prints found at the crime scene matched the shoes taken from the property bag of Stephens's co-defendant, and (4) the credibility of testimony that certain individuals knew about the deaths of the victims before the police found their bodies.

**AFFIRMED.**

**HUFF, THOMAS, and GEATHERS, JJ., concur.**